UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CLARENDON NATIONAL INSURANCE COMPANY, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiff, | | |
| v. | | Civil No. 17-12541-LTS |
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, | | |
| Defendant. | | |

ORDER ON MOTION FOR SUMMARY JUDGMENT (DOC. NO. 16)

January 8, 2019

SOROKIN, J.

On November 29, 2017, plaintiff Clarendon National Insurance Company ("Clarendon") filed suit in Suffolk Superior Court against defendant Philadelphia Indemnity Insurance Company ("Philadelphia"), claiming damages arising from Philadelphia's denial of coverage under an insurance policy issued to Lundgren Management Group, Inc. ("Lundgren"), whom Clarendon had also insured, in a 2009 Suffolk Superior Court suit. Doc. No. 1-3. On December 21, 2017, Philadelphia removed the case to this Court. Doc. No. 1. The parties agreed to phased discovery that would be initially "limited to the discre[te] question of whether [Philadelphia] had a duty to defend Clarendon's insured" in the 2009 suit. Doc. No. 13 at 2, 14. Now that the first phase of discovery has concluded, pending before the Court is Philadelphia's motion for summary judgment, Doc. No. 16.

I.  BACKGROUND

Clarendon issued a liability insurance policy to Admirals Flagship Condominium Trust ("Admirals") for the period of June 24, 2004 through June 24, 2005, in which Lundgren was an insured. Doc. No. 28 ¶ 1.[1] Philadelphia issued a liability insurance policy to Lundgren for the period of September 1, 2007 through September 1, 2008. Doc. No. 18 ¶ 1.

On February 12, 2009, Denise Dougherty brought suit in Suffolk Superior Court against Lundgren, Admirals, and others, amending her complaint on or about April 29, 2009. Doc. No. 28 ¶ 3; Doc. No. 19-2. The amended complaint sought damages for negligence, nuisance, trespass, misrepresentation, and breach of contract, stemming from the failure of Dougherty's condominium's management to make adequate repairs to her unit at 50 Boatswains Way, Chelsea. See generally Doc. No. 19-2. The amended complaint alleged that Admirals owned the common areas of 50 Boatswains Way, while Lundgren managed them. Id. ¶¶ 12, 14. The complaint alleged that leaks had developed in the condominium unit's roof area "during the year 2004." Id. ¶ 16. It alleged that those leaks "caused ceiling cracks and loosening plaster," which was not repaired "in a timely or appropriate manner" despite Dougherty's requests. Id. ¶ 17. These issues continued in 2005 and 2006, and on March 10, 2006, hazardous mold was discovered in the unit. Id. ¶¶ 18–23. According to the amended complaint, although Lundgren told Dougherty the leaks and mold would be remediated, repair efforts were unsuccessful. Id. ¶¶ 24–26. Finally, on September 2, 2008, Dougherty's doctor ordered her to vacate the unit until

---

[1] Philadelphia filed a statement of material facts, Doc. No. 18, which Clarendon responded to, Doc. No. 23. Clarendon's response included additional material facts, which Philadelphia responded to. Doc. No. 28. For clarity, because Docs. No. 18 and 28 are the only filings that include only one continuous set of paragraph numbers, the Court refers to the parties' submitted material facts using citations to Docs. No. 18 and 28. Unless otherwise specified, they are uncontroverted.

2

the mold was eliminated and the leaks repaired. Id. ¶ 27. The complaint alleges that these events led to severe adverse health effects, loss of personal property, loss of value in the condominium, and loss of income for Dougherty. Id. ¶ 29.

On June 30, 2009, counsel for Lundgren and Admirals tendered the defense of the amended complaint to Philadelphia, Doc. No. 18 ¶ 3. Philadelphia declined it by letter on July 24, 2009. Id. ¶ 4. Acknowledging that Dougherty's complaint "allege[d] water leaks that began in year 2004 which caused mold," Philadelphia's letter stated that its policy did not cover the damages sought in Dougherty's suit. Doc. No. 19-3 at 9. The letter offered several justifications for this claim, including that the suit contained "no allegations that occurred within [Philadelphia's] policy period" and that "the policy specifically exclude[d] 'property damage' to property owned (common elements) and any damages that result from 'fungi' as defined in the policy." Id. at 15. However, because Philadelphia "believe[d the] matter [was] so clearly outside the scope of the Policy," it did "not raise[] other defenses to coverage which may be applicable and reserve[d its] right to raise other such" defenses later. Id.

On October 7, 2014, Clarendon issued another demand to Philadelphia through North American Risk Services ("NARS"), Clarendon's third-party administrator. Doc. No. 28 ¶ 20; Doc. No. 18 ¶¶ 6–7. The letter argued that, while Philadelphia had no responsibility to indemnify its insureds for damages caused by mold, it did have a duty to defend against Dougherty's suit "for personal property damage possibly caused by water alone." Doc. No. 19-3 at 17. Because the damages in Dougherty's suit could have included some compensation awarded solely for water damage, the letter claimed, Philadelphia "had a duty to defend the matter and indemnify for personal property damage" caused by water alone and therefore owed "a pro rata share of the defense costs related to" Dougherty's suit. Id. at 23. On November 3, 2014, Philadelphia

3

responded to NARS by letter. Doc. No. 18 ¶ 8. This letter again denied that Philadelphia had a duty to defend against Dougherty's suit, reiterating that the "'property damage' is alleged to have occurred prior to the inception of [Philadelphia's] policy" and therefore was not covered. Doc. No. 19-3 at 26.

Dougherty's lawsuit ended in settlement in October or November 2014.[2] On March 17, 2015, Clarendon obtained authority from Lundgren to bring claims against Philadelphia arising from the Dougherty suit. Doc. No. 28 ¶ 23.

II.     LEGAL STANDARD

The Court applies the familiar summary judgment standard. Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court is "obliged to view the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993). Even so, the Court must ignore "conclusory allegations, improbable inferences, and unsupported speculation." Sullivan v. City of Springfield, 561 F.3d 7, 14 (1st Cir. 2009).

In an insurance dispute such as this one, "[t]he insured has the initial burden of proving that a loss falls within the policy's description of covered risks," after which it becomes "the insurer's burden to show the applicability of a particular exclusion." New Fed Mortg. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 543 F.3d 7, 11 (1st Cir. 2008). At that point, settled

---

[2] The parties disagree about the date of the suit's settlement. Compare Doc. No. 18 ¶ 10 with Doc. No. 28 ¶ 22. An order for entry of dismissal of the Dougherty lawsuit apparently entered on October 9, 2014, because the matter had been "reported settled." Doc. No. 19-3 at 30. This dispute is immaterial to the Court's resolution of the pending motion.

law instructs that (1) "[e]xclusions from coverage are to be strictly construed" and that (2) "[a]ny ambiguity in the somewhat complicated exclusions must be construed against the insurer." Mt. Airy Ins. Co. v. Greenbaum, 127 F.3d 15, 19 (1st Cir. 1997) (quoting Sterilite Corp. v. Continental Cas. Co., 458 N.E.2d 338, 342 n.10 (Mass. App. Ct. 1983)); see also Utica Mut. Ins. Co. v. Herbert H. Landry Ins. Agency, Inc., 820 F.3d 36, 42 (1st Cir. 2016) (noting that the rule of construing an insurance policy in favor of the insured "applies with particular force to exclusionary provisions" (quoting Metropolitan Prop. & Cas. Ins. Co. v. Morrison, 460 Mass. 352, 363 (2011))). Settled law also advises that "every word must be presumed to have been employed with a purpose and must be given effect whenever practicable." Metropolitan, 460 Mass. at 362 (internal citation and formatting omitted).

III. DISCUSSION

Philadelphia's insurance policy provided that Philadelphia would "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Doc. No. 19-1 at 60. But it further provided that such coverage would apply "only if . . . [t]he 'bodily injury' or 'property damage' occurs during the policy period; and . . . [p]rior to the policy period, no insured . . . knew that the 'bodily injury' or 'property damage' had occurred, in whole or in part." Id. "If such a listed insured or authorized 'employee' knew, prior to the policy period, that the 'bodily injury' or 'property damage' occurred, then any continuation, change, or resumption of such 'bodily injury' or 'property damage' during or after the policy period will be deemed to have been known prior to the policy period." Id. "'Bodily injury' or 'property damage' will be deemed to have been known to have occurred at the earliest time when any insured," or authorized employee thereof, "[b]ecomes aware . . . that 'bodily injury' or 'property damage' has occurred or has begun to occur." Id.

5

Dougherty's amended complaint alleges damage that began well before the beginning of Philadelphia's policy period on September 1, 2007. The complaint alleges that leaks developed "during the year 2004," Doc. No. 19-2 ¶ 16, and continued through 2005 and 2006, developing into hazardous mold. Id. ¶¶ 18–23. It also specifically alleges that Dougherty notified Lundgren of the leaks on several occasions throughout that period. Id. ¶¶ 17, 24–26. Lundgren therefore had knowledge of the damage before the policy period began. Accordingly, the damage does not fall within the plain terms of the policy excluding coverage for damage that was known to have occurred before the period began.

Clarendon argues that Dougherty's complaint can be read to suggest that, although the original leaks were repaired adequately, "new leaks arose due to underlying building envelope issues" during the period of Philadelphia's policy. However, Philadelphia's policy also excludes coverage for damage that resumes during the policy period if the damage began and was known before the period. Accordingly, attempts to remediate the damage, even temporarily successful ones, do not transform the later continuation or recurrence of <u>that very damage</u> into new instances of property damage that would potentially be covered. Further, Dougherty's complaint does not allege that Lundgren's repair efforts were ever successful at abating the leaks entirely, even temporarily, such that leaks occurring during the policy period could have been considered new leaks. Rather, it plainly alleges that the leaks and resulting problems were continuous throughout the relevant period. Nothing in the complaint suggests that the damage that occurred during the policy period was the result of a new problem that arose for the first time during the

period. Unsurprisingly, plaintiff's motion, while disputing this point, fails to cite specific allegations in the complaint that support its position.[3]

Because the damages alleged in Dougherty's amended complaint are not "reasonably susceptible of an interpretation that they state" a claim covered by Philadelphia's policy, the suit did not trigger Philadelphia's duty to defend. Cont'l Cas. Co. v. Gilbane Bldg. Co., 461 N.E.2d 209, 212 (Mass. 1984) (internal quotations omitted). Because Philadelphia therefore did not breach its contractual duties to its insured, Clarendon's claim against Philadelphia for breach of that contract, Count II, fails. Because Clarendon's claims for contribution and violations of Mass. Gen. Laws, ch. 93A and 176D, Counts I and III, are premised as a matter of law on the applicability of Philadelphia's duty to defend and indemnify against Dougherty's suit, they similarly fail.

---

[3] Clarendon appears to argue in part that, regardless of the allegations made in the complaint, facts that became available during discovery in Dougherty's case could have revealed that new damage arose during the period of Philadelphia's policy, giving rise to duties to defend and indemnify. See Doc. No. 22 at 12. Even assuming (without deciding) that discovery material can broaden the scope of a complaint, such new information could only trigger a duty to defend if notice were provided to the insurer of the information. In this case, Philadelphia claims, based on evidence, not to have received any notice related to the Dougherty matter after Philadelphia's initial declination letter until the end of the matter in 2014. Doc. No. 18 ¶¶ 5, 9. Although Clarendon claims that it would need to take discovery to be able to dispute this claim, Doc. No. 23 at 2, it has not made a motion under Fed. R. Civ. P. 56(d) for additional discovery, which motion would, at any rate, be improper because Clarendon has already had opportunity for discovery on this issue during Phase I. As a result, because there is no genuine dispute that Philadelphia did not receive notice of discovery information in the Dougherty matter that could have triggered duties to defend or indemnify, Clarendon's argument fails.

IV.     CONCLUSION

For the foregoing reasons, Philadelphia's motion for summary judgment, Doc. No. 16, is ALLOWED in its entirety. The Clerk shall enter judgment in favor of Philadelphia on all counts, with each side to bear its own fees and costs.

SO ORDERED.

 /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge